v. IBM, 21-1758. Okay, so we have Mr. Silber for the appellate. And I understand you would like to reserve three minutes for rebuttal. Is that right? That's correct. Thank you. You may proceed. Thank you. Good morning, and may it please the Court, Greg Silber for Nuance. IBM's principal argument is that willful blindness was not necessary to the District Court's conclusion that the claims were time-barred. But what the District Court tells us, at page five of its decision, is that the outcome of the case turns on its determination that Nuance was willfully blind. And if that's not clear enough, the Court's analysis of the time-bar is contained in sections of the opinion that are headed, the willful blindness doctrine and applying the doctrine. And then the Court's ultimate conclusion, which you find at pages 58 and 59 of the special appendix, are number one. Okay, but we can affirm based on anything that's in the record, right? So the District Court does make findings that say that Nuance was aware that IBM was producing updates in IBM software and that IBM was not sharing those updates with Nuance. Why isn't that enough to say that Nuance was aware? If you just took out the willful blindness stuff, wouldn't that be enough? It wouldn't, Your Honor, for two reasons, both of which are important. Number one, this is a judgment after a bench trial, and actual knowledge is a fact issue. So the District Court sits as a finder of facts. This Court doesn't. And if the District Court does not find actual knowledge, which it didn't, then I don't believe that this Court can find it. How do you do that? Page 53. I'm looking at the last sentence. Therefore, the Court finds by preponderance the evidence that Nuance knew IBM was withholding code developed by IBM software. Yeah. It says that, right? It just says that. New. Yeah. Okay, not ought to have known. So, again, didn't they? It's backed up, and that's the conclusion of about five pages, starting on page 48 of the opinion that lists a rather remarkable list of reasons why the court that Nuance actually knew that IBM was withholding code developed by IBM software. In connection with responding to Judge Lynch, I'm also looking at page 48, which precedes the list, where, again, the judge says the following evidence shows Nuance knew IBM software was creating updates, et cetera. Are you suggesting the District Court did not actually make a finding, despite those two sentences on that one list, of actual knowledge? The District Court clearly did not make a finding of actual knowledge. It says that on page 54. It tells us what its finding was. We knew of a substantial possibility of breach, but not that we knew of breach. Let me walk through those bullets. I understand it talks about it makes findings that Nuance was withholding lines. But where does it say in those findings, as I think you just suggested, that it said it did not know? What the District Court finds at pages 54 and 58 of the decision are that Nuance knew of a possibility of breach. But it already said it also knew. If you make findings, isn't it perfectly consistent for a District Court to basically make two mutually reinforcing factual findings? Number one, you knew. And number two, you also knew of the significant possibility of something, and then you also didn't take steps to confirm it. Those are two perfectly consistent things that can coexist, right? If the first one were true, the second one would be irrelevant. But if you knew of the fact, you wouldn't necessarily need to say you know of the possibility of the fact. But let me get right to the heart of it. Those bullet point findings from 48 up to 52 of the decision, those do not establish actual knowledge, and the District Court does not offer them for that purpose. The reason is— Wait a minute. So you're saying—so, okay, you make two statements there, right? One is they don't show actual knowledge, and that would be something we would review only for clear error, right? You would agree? Correct, yeah. And the second point, though, is you're saying the District Court didn't even make the findings, so it's not like we're asked to overturn it. Those are two distinct arguments. The District Court did not find actual knowledge. It found that we knew of a possibility of breach, and it tried to close the gap with Wolf and Clark. The District Court did make the following findings. The District Court found that Nuance knew that IBM Software was making an update, right? Correct. The District Court also found that Nuance knew that IBM was not sharing anything from IBM Software. Not correct. Look at page—no, we are undisputedly getting updates from IBM Software. The District Court finds that on page 19. It's explained in detail at page— Well, you may be getting some, but the finding, the specific finding on 53, by a preponderance of the evidence, is that Nuance knew that IBM was withholding code developed by Software. Absolutely right, and we are not entitled to all the code that IBM Software developed. You're saying that the finding just says that IBM was withholding code, but not updates. Well— Therefore, it's consistent with the District Court finding, putting aside method blindness, that maybe IBM was withholding code developed by IBM Software, but was still receiving all updates. IBM—let me try to clarify, because I think it will clear up a lot of these questions. IBM is perfectly allowed to withhold code from us from IBM Software unless that code is domain-independent and meets the other requirements of the SLA. And another important point, which is at page 19 of the decision and 1437 to 1442 of the JA, we are getting domain-independent code from IBM Software throughout. So we know that we are getting some of the things that we're entitled to from IBM Software. What we don't know is whether we're getting all of it. We know that IBM is withholding some code, that's true, but what we don't know is whether the code that it's withholding is the code that we're entitled to. Let me ask this based on the record. So we have the memo from January 2013 from—what is her name? Jean McCann. Yeah, McCann, who says, due to their interpretation, the IBM Software Group is not allowing any joint work with IBM Research to occur, as the IBM Software Group wants to be absolutely sure that none of their software work is being made available to Nuance. There may well have been a transfer of the entire Watson code tree to the software group in order to allow IBM to execute work in the software group and completely independently of IBM Research work to keep any such work exclusive to IBM. Correct. I mean, doesn't that mean that you are aware that there's a strict division between the two and IBM Software is further developing code, they have a complete copy of it, they're working on it independently of the rest, and you're not getting anything from IBM Software. So you're saying that you couldn't believe this and yet still believe that despite this arrangement, IBM still, when they make domain-independent modifications to the code on the software side, they're going to share that with Nuance? Critical point here, Judge, which goes to the heart of your question. It is not true that we are not getting anything from IBM Software. Throughout, we are getting domain-independent updates from IBM Software. What was she reporting then when she said this? She was speaking in the context of a different agreement, but she was saying, look, they have a version of the code and they're going off on their own. We don't know what they're doing. And after that, a month after that... But she's talking about the Watson-JDA, I guess the other agreement. I understand. One reason why we might not want to extend that is because of the way they're interpreting it. And every time these kinds of suspicions come up, we ask them, and a month after that statement, the one that you referred to, so in February 2013, they assure us that we are getting everything that we're entitled to. Isn't that what's interesting about this to me? And I'm not sure this constitutes some kind of willful blindness, actually, but it is remarkable. And if this were a question of inquiry notice, the problem is you never made the right inquiry. It's startling. You say, are we getting everything that we're entitled to? And they say yes. And you know what? Throughout this litigation, they continue to say yes. I think they're wrong. The district court thought they were wrong. But they apparently had a different interpretation of what an update means. And no one ever thinks to ask, are we getting everything back? And then fill in the blank of what you think you are entitled to. You just say, are you breaching the contract? And they say no. When obviously it turns out they have a different interpretation than you do of what the contract means, or at least they purport to. That's the reason why they think that they're able to. No one seems to have known they had a different interpretation. She talks about them having a different interpretation. Possibly. Look, Judge, they knew what our interpretation was because we told them. So after the district court makes these findings and its bullet points about they said that it's only research, not software, those are in the context of the proposed amendment, which we reject. And then in November of 2011, we tell them, under our view of the contract, we get everything, not just research, everything, all of IBM. You find IBM's internal e-mails discussing that position of ours at page 148 of the joint appendix. And they disagree with that interpretation. But they propose an amendment limiting it to research. We say no. Then we say, look, we get everything. They never come back and say, no, you don't. It's different from that. What they do instead is they move over 130 people out of research into software, and they take the position that they don't have to give us the things from software, but we don't know that because we are getting some. You don't know that they've taken that position, but you do know that they've moved everything into software. No, no, we don't know that they have moved. Well, you know that there's a firewall. You know that there's work going on on the other side of the firewall, software group, and that they've said they don't get anything from the software group. And we know, and again, this is a critical point, 1437 to 1442 and page 19 of the SBA, and we know that we are getting domain independence from software throughout that period. So the question in our mind is never, are they going to give us anything from software? We know that we're getting productization updates. The question is, and the breach is, not are we getting anything. Are we getting everything? Are we getting everything that we're entitled to? And that's what we ask them. We say, look, you know, you're not giving us much. Are we getting everything that we're entitled to? And they say yes, knowing that our position is we're entitled to everything, regardless of where it comes from. But also purportedly believing that you're wrong as to what you're entitled to. So if they believe that they're right in their contract interpretation, then they are accurately saying, yes, you're getting everything you're entitled to. But if you come in and you say, I'm entitled to the Brooklyn Bridge, am I getting everything I'm entitled to? They could still say, yes, you're getting everything you're entitled to if you're wrong about the contract. But the question is, when did we have actual knowledge of the breach? And since we were getting domain independence from software throughout, and since they knew that our interpretation of the contract was we're entitled to everything from software that meets the SLA's requirement, and since most of the work that software would do would be domain dependent and therefore not something that we would be entitled to under the contract, the fact that they're giving us something but not everything that we get under the contract. So you think that they were legitimately protecting, on the other side of the firewall, products, domain dependent work? Yeah, they don't have to give us work that is domain dependent. Everybody agrees on that. Domain dependence is about stuff that is not geared toward a particular product, right? Well, no, it's not. It's product technology. No, no, no. It's not that domain dependence might be geared toward a particular product. Domain dependence is something that would work in a particular application like health care, but it's not something that just improves the general functionality or performance of the question. I guess my question is this. You take the position that actually the contract, contrary to what this report said, entitles you to product updates. That's right. If they're domain independent, absolutely. But wasn't it clear to you that, at the very least, IBM Software was doing product updates that you were not getting? But, again, we would have to know what the product updates are and whether they... So, what's the answer to that yes or no? We know that they're making product updates, but if the product updates are domain dependent, we don't get them. What we would need to know to have actual knowledge of the breach is that... You're saying you would not be entitled to that. Correct. The actual things that the district court finds are things you are entitled to are... Well, the thing is the blue wash code, and it seems to me at least arguable that the Watson Core also qualifies. I'm not sure the district court has said that. Well, the district court said that Watson Core was a product, but IBM, I think, page 42 of the reg. Yeah, I was a little disappointed by that. But the point is, at most, we've got these two things. They may be very important things. I'm not disputing that. But those are the things that, at the end of the day, are the kind of things, the only things, even more than the only things, the district court found that they breached with. And, in fact, you're saying, how could we know that? They have this very specific sort of thing, and that's what would breach the contract. They're giving us some things, but they're not giving us those things, and we don't know that those things are there. I'm sorry. Yes, Your Honor. And then I have a follow-up to your question. Why don't you finish that statement. Okay. Just one thing. It's not just the Blue Watch Code and Watson Core, and this is the reason why the product issue is important, because what IBM did, and remember, IBM is a bad-faith breacher here, right? So what IBM did was it worked in domain-independent improvements to the Deep QA programming and function into products. But it did not, as it was supposed to do, pass those on into a common core that the products would sit on top of. Well, yeah, but what you just said is these improvements were directed to something specific. They didn't put it into something that changed the core. The idea is the core, and that's the thing you're entitled to get. So product is agnostic as to whether it's domain-dependent or domain-independent. Most products probably are domain-dependent, but you can have domain-independent products. There are some which we would get. And then the other thing, and this is explained in the book. When I looked at your list of products, I was frankly not persuaded. I thought Watson Core was the only thing that got added, in my mind, to the Blue Watch Code as something that was truly domain-independent. I think, Your Honor, if you agree with us that the SLA does not say anything about product versus non-product, which it doesn't, that's a distinction that the district court added, you could remand to the district court to determine which of those products are domain-independent and which are domain-dependent. Are you saying the district court misunderstood what domain-independent meant? I'm saying that's not the... The way I look at this case, because I tend to not like the idea that litigation has to go on forever, the way I see this case, the district court said, you win, except for the statute of limitations, and here is what you win, right? And the issue, the principal issue in the case, is the statute of limitations issue. Are you also appealing... You are saying that the district court got something wrong about how much you win? Correct. Because we would win at least the Blue Watch Code and Watson Corps, and then as to the products, the district court said, well, what you don't get is products. And our point is simply, no, what we don't get is something that is domain-dependent. Well, but what does that mean? Because these products all seem to be aimed at particular domains or particular applications. So is what you're saying that if a domain-dependent product is created, but somewhere inside of that, the way this particular product works, is a change in or an improvement on the basic court. But they just didn't put it in the basic court. They only put it in this particular domain-dependent product and that particular domain-dependent product and the next particular domain-dependent product. Is that what you're saying? Yeah, because we get domain-independent modifications or improvements. So even if they make a domain-independent modification, but it's geared toward implementing the code into a product, there's some metaphysical line they cross as they're making improvements and turning it into a product, at which time here they're improving the basic functionality of doing something domain-independent, and here they're implementing it in a particular application. Give me an example. And then you get what's on this side of the line and not what's on that side of the line, right? Yeah, but the line isn't that blurry. There are examples of this in the testimony of Mr. Petro, and he's one of the first witnesses. He's describing improvements that were made for BMW, and he says, look, we had to solve a problem for BMW that was domain-dependent, domain-specific, but in the course of doing that, we came up with a new way of filtering, of doing signal boosting. I apologize if this is repeating it, but I just want to be clear on it. Wasn't it just clear that IBM Software was doing that, but you think you were still getting even the product updates for that? Remember, all the stuff in the bullet points that you pointed to about vanilla productization, hygienization, those things that the court said we knew that IBM Software was doing, we got those. We were getting the vanilla productization. What we weren't getting was the stuff that we didn't know about, and to paraphrase Donald Rumsfeld, we didn't know what we didn't know. We didn't know what we didn't know, but I guess that's what we're getting at. I guess even with the blue-wash code, so if Ms. McCann knows in 2013 that they're creating a division between IBM Software and IBM Research, and IBM Software gets a full copy of the code to do its own work, and the whole reason why they're separate is so IBM Software can continue working on the code and not have to share it with you because it's not touching IBM Research, then don't you know that they're making these kinds of updates to the code? What we know, and again, if you look at page, the district finds it at page 19, and it's explained at 1437 to 1442 and 124 of the JA, we know that we are getting productization updates from software. So all this business about a firewall, we know that code is... So when all of this corresponds when the people at Nuance are upset that IBM is following the letter but not the spirit of the agreement and they should give us more stuff, what are they talking about that they're not getting that they think they should get? We thought this was going to be a flood of improvements, and the stuff that they're giving us is not worth all that much, and we're thinking, hey, you should be doing more with this, and they're not, but we don't know until... Okay, I get that. Can I ask about willful blindness more generally? Sure. So why is it that willful blindness wouldn't be a way to determine actual knowledge? So I know that you don't think this is what the record reflects, but let's say the record reflected a conversation between executives at Nuance where they said, you know, it sure looks like they're not giving us updates from the software side, but I don't know if it would be worth suing them because I'm not sure they've developed anything. So let's avoid asking them this question until it looks like it would be lucrative for us to sue because there might be some further developments that we could get. If, like, there was some smoking gun email that said that, that they purposefully avoided confirming their suspicion because they didn't think it was cost-effective to sue at that time and they wanted to extend its actual limitations, wouldn't we say that they had knowledge at that point? So that is exactly the kind of willful blindness that some district courts have found is sufficient to show actual knowledge. Other district courts, and this court, I think, in Rosner, says, no, it just doesn't work, you can't do it. So why? I guess I want the reasoning for that. Why wouldn't it work? Well, because, look, the type that you're talking about, right, which is, and it's the kind that the Supreme Court discusses in Global Tech, U.S. Supreme Court, all of that, those are culpable states of mind. That's what I think Judge Engelmeyer's thoughtful decision in Vasquez, he draws a clear distinction. One kind of willful, what he calls willful blindness, and there's a terminology issue here. Some people say willful blindness is culpable state of mind, more like what you're describing, Judge Menasche, or like the way I think of it, you know, you give me the bag of white powder and you say, take this to the drug courier. And I say, okay, but, you know, don't tell me if it's cocaine, right? Like, at that point, I am equally culpable as the person who says this is cocaine, right? And then we made this distinction in Madoff in 2021 between willful blindness and inquiry notice. And exactly right. And what the district court is applying here is undoubtedly inquiry notice. We know that because it tells us. It says the court's conclusion, and this is where it all wraps up after all the bullet-pointed findings, all the analysis, we get to pages 58 and 59 of the decision, and what does the court say? It says, first, you had a, nuance had a duty to inquire under the willful blindness doctrine. It didn't do it. The district court did willful blindness wrong. I guess my question was, if we do have it, we also make an argument that it's just never appropriate to say that willful blindness establishes actual knowledge. I guess, so if district court did it right, and it was more like my hypothetical, would that establish knowledge? Well, it didn't do it right. But if it did, I think that... Well, it's what you're saying, that in Judge Menasci's hypothetical, that's not really culpable. In other words, the reason that we have willful blindness, which develops principally in the criminal law, as a concept, is that drug courier, in your example, can't say, well, it looks like marijuana, and it smells like marijuana, and the guy even maybe told me it was marijuana, but I don't really have to believe him, and I'm just not going to, I'm not going to do a test or anything, and therefore I don't really know that it's marijuana, that that's essentially plausible deniability. It really does rise to the level of knowledge, and you're just sort of playing a game here to try to avoid being found to have knowledge. But in his hypothetical, is your point that there's nothing culpable about not filing a lawsuit that may lead nowhere for anybody? I mean, the courts like people to not file lawsuits prematurely. The courts don't want people filing speculative lawsuits to get discovery and then see whether they've really got a claim or not. So if you were, it's sort of hard for me to see a real commercial motive. Why, if you had the kind of knowledge, the level of knowledge that the drug courier has, you wouldn't file a suit. What would be the point? You want the information. You don't want to get the information three years later from a lawsuit. Is that true that there's no harm to you? I mean, what if you were saying, well, look, we don't think we're getting these updates, but if we sue now, then they won't do further developments and we're not going to get anything lucrative out of the lawsuit. Why don't we wait to sue to see if they develop some kind of product that would be worth getting? Why wouldn't it be culpable for you to try to gain the contractual statute of limitations in order to sue at the opportune time? We're getting pretty speculative here because these are not the kind of things that... I understand. I understand the whole thing by saying I know that these are these facts, but what it's meant to ask is, isn't it appropriate, in some circumstances, to say that willful blindness is tantamount to knowledge? Here's the critical point, Judge Minocci. There are two versions of willful blindness that get discussed in the cases. One of them is the version that the district court applied in this case, which is you had a duty to inquire and you didn't satisfy it. Everybody but everybody, including Vasquez, including Fraternity Fund, everybody says, no, that's constructive knowledge. Then there's the kind that you're talking about, which is you took deliberate actions to avoid finding out something, and that is a culpable state of mind. In virtually every case where that comes up, it's a defendant trying to avoid some liability or duty. To take a leap and apply that to a plaintiff where, well, you could have sued earlier, but maybe you wanted to hang out and see what happens, I don't think that leap is supported by the cases, but even if you wanted to go that far, this wouldn't be the case to do it, because in this case, we know that the district court is applying the you had a duty to inquire kind of a point. You have a duty to inquire, but it is talking about it in the context of willful blindness, so it's not totally clear whether it's the same duty as an inquiry notice duty. But just stepping back and looking at it more generally, isn't the district court basically saying, you had so much knowledge about what was going on, and to the extent that you were unclear on this finer point that maybe they would still give you product updates from the other side of the firewall, you could have cleared that up just by asking a very simple question and you didn't do it. And under those circumstances, I think you really had knowledge. Well, we agreed with IBM that the statute of limitations clock ticking is actual knowledge. There is no dispute about that. We agreed to shorten the clock from six years to two years, but we said, doesn't run until actual knowledge. As you yourself point out, every contract has within it a covenant of good faith and fair dealing. Right. So if somebody purposefully avoids obtaining actual knowledge when they think they're on the cusp of receiving it in order to manipulate the terms of the contract and get more time to sue, wouldn't that be a breach? It's not on the facts here, because look, again... Counsel, I think what I'm going to ask you to just finish that and give it 15 seconds. We've kept you up for quite a long time because I think it's time to hear from your adversary. So why don't you just finish answering Judge Monash's question and then we're going to move on. Yes, Your Honor. Thank you. It's not on these findings because as the district court found on page 19, we were getting updates. We just weren't getting all of them. We didn't know which ones we weren't getting. That's not actual knowledge of a breach. Okay. Thank you very much. And you've reserved three minutes even though we've kept you up for a lot longer. We appreciate it. And why don't we hear from Mr. Reed for the appellate. Good morning, Your Honors. Kevin Reed of Quinn Emanuel, Urquhart & Sullivan for IBM. The district court was correct and didn't err clearly or otherwise in finding that Nuance's claims were time barred and in finding that Nuance did not in any event have the right to receive source code to any IBM product under the party's license agreement. Now I'll start if you don't mind with the statute of limitations issue. The alleged breach Nuance sued on was IBM's refusal to provide Nuance with updates to DPQA created outside of IBM research. According to factual finds that Your Honors highlighted made after trial, the court found that Nuance had actual knowledge of that supposed breach in 2011. And we know that's the standard the court applied because at page 42 of the opinion the court said to prevail on the statute under the limitations defense, IBM must show that before June 30, 2014, Nuance achieved actual knowledge of the alleged breach. So the court then found on page 48 actual knowledge can be inferred from the evidence that Nuance knew that IBM software was developing updates to DPQA and two, IBM was withholding code developed by IBM software. The court found at 21, beginning in 2011. You actually say that there is no breach and yet they knew about the breach which is a little peculiar. They had actual knowledge of something that you say is clearly not a breach. Correct. We don't believe that they're right that it was a breach but to the extent they claim it's a breach they knew the claim in 2011. They knew all the facts that would have enabled them to. Because they, at least what we've heard from your adversary is that they were being cautious because there is no pun intended a lot of nuance here at least as far as I can construe it. Maybe all of apparently your own experts disagree about what should or shouldn't have been turned over under updates. But from my sort of relatively ignorant perspective it seems to me there's a lot of question and a lot of dubiety around what constitutes an update. What is it that is really domain independent and what is domain dependent? We've been talking about this for at least part of the argument. What if they're doing a specific healthcare thing and in the course of doing that domain dependent work somebody comes up with hey we could solve this by writing this code into this domain dependent product. And someone looking at it objectively might say oh you know what that's actually a pretty general idea. We could build that into a lot of products. And then they put it into some other domain dependent product. I have a little trouble seeing that as an update to something that may no longer no one may any longer care about. The blue wash general QA or the Watson core they sort of put it into Watson core. You just keep putting it into new domain dependent products. So I mean it seems to me it's a rather tricky business trying to figure out whether there is a breach here. And why are they to be faulted for waiting until they had something rock solid rather than the first indication that they aren't getting everything that comes from IBM software. They rush to sue and say you must be doing something wrong. And then you come back and move to dismiss that complaint on the ground that they haven't plausibly alleged anything very concrete. Why can't they wait until they've got something better? What's culpable about that? Your Honor, what's culpable about that is that all of that confusion that Your Honor just detailed was not in their heads and did not exist in their minds. And that is because IBM told them repeatedly, and the court found this as a matter of fact, whatever IBM software group is doing, no matter what it is, you are not getting it. We are not giving you anything from IBM software. But didn't we just hear that you actually did give them things that came from IBM software? This is a classic no good deed goes unpunished. The facts here are, and I know this from trying the case, there was a group of people who moved from IBM research into IBM software because those people had been primarily responsible for developing certain updates. IBM, as a matter of good faith, continued to give that group's output to nuance. But why wouldn't that give them the impression that they are getting updates from the software side? Because there is no evidence that they ever knew where those updates were coming from. You will search the record and you will search their briefs. You will not find any evidence that they knew contemporaneously that IBM was delivering something that was not IBM software. Those were updates from the IBM research side? Right. And they claim as much in their briefs, they claim we didn't know what this code was, we had no way to verify what it was, what it did, where it came from. All we knew was that we were getting code. Well, what you also knew, if you are nuanced, is that it wasn't coming from IBM software and that IBM had in fact directed a firewall to make sure. Right. So you are saying that the district court found and the district court did find that you took the position that they only have an agreement with IBM research, they are only getting things from IBM research and there is a firewall and so on. That software was making developments and they are not getting stuff from software. But the district court does rely also on the Wolf of Blindness finding. It says they never actually confirmed that they wouldn't get anything from the software side. And why couldn't it be that their intention was to protect domain dependent prioritization that they are not entitled to under the contract, they would still get domain independent work that occurred on the other side of the firewall. Because IBM told them there is a firewall to prevent anything from IBM software from passing to them.  that if you look at page 50, you see the bullet point, the first bullet point at the lower half of the page, McQueen, IBM's chief of engineering, McQueen. The chief innovation officer and former vice president of software and research credibly testified that Ritchie, that's Nuance's CEO at the very top, was told at a meeting that Nuance is not entitled to any modifications developed by IBM software. If you go to the next page, now you hear it from Nuance's witness. The bottom of page 51, credible deposition testimony from Mark Fante, Nuance's director of core research, indicates that Murphy Debra Aconda, a manager for IBM, told him that Nuance would get only what's from research, not from what's outside research, and that quote, you don't get anything from software. You go to the third page. So then the district court, when the district court is doing the willful blindness analysis, do you think that's just Delta and suspenders, and you could delete it from the opinion and it would make no difference? I think that's a fair way to characterize it, and if you look, the court explains why it's doing that. It says at the court, Nuance claims that Nuance knew IBM was doing updates, and IBM wasn't giving Nuance those updates. The court writes, notwithstanding the above, Nuance claims that upon receiving some information that IBM was not performing under the agreement, it sought general assurances from IBM that it was providing all the updates to which Nuance was entitled. And then he says, Nuance argues that it did not seek specific assurances because it thought it might get the updates anyway, or that the withholding of IBM software updates was only temporary. And the court's willful blindness finding is essentially it's not plausible that you believed that. Well, the court doesn't say that, right? The court says, well, you might have believed that you would get the updates anyway, or that the withholding of the updates was only temporary, but you could have cleared that up by asking a question. You didn't ask the question, and therefore you're willfully blind. But if they did, in fact, genuinely believe that the withholding of   then you're right. I don't think that's right, because the evidence that the court cited in support of its factual findings is that in 2011, Nuance knew IBM was making updates in software and was not giving them those updates in software. So the status quo is they're not getting those updates. But they don't know what's in those updates. They don't know what's going on in software. It's not a matter of what's in them. It's a matter of where they come from. But that wouldn't be a breach. If all that is happening, if the firewall is set up, and there's a separate division in IBM software, and IBM software is tasked with making domain-dependent products, then they would know that they're not getting anything from software. They would know that software is doing stuff, but they would not know that any of those updates or anything that software was creating was actually a non-domain- dependent update improvement on the basic core product. But the factual finding was that they did know that IBM software was doing domain- independent work on the Deep QA core, which they claimed to be an update. And what is the evidence of that? They said, well, it looks like they got a full copy of the software and they're still doing the development. The evidence of that, that's one piece of the evidence. Another piece of the evidence is IBM, on page 48, the court cites a 2012 email from an IBM employee to Nuance referring to the specific enhancements completed and planned to the Deep QA engine that IBM software has done. That's domain- independent. The information that McCann writes in 2012 to her CEO, noting that they, IBM software, have done work on vanilla productization of Watson. Vanilla is a synonym for domain- independent, meaning you can apply across use cases. So... Sorry, go ahead. Let me face the floor and then I have a different question. Why don't you proceed? So I would ask a question about the breach, which is you say that there wasn't a breach really because it was assumed all along that it's just to do with IBM research, right? But the district court says, you know, there is the contract and there's also the covenant of good faith and fair dealing. So I guess I have this question, which is even if you were right that contemporaneously it was understood that it was agreement just with IBM research, wouldn't it be a violation of good faith and fair dealing if you in fact diverted everything that IBM research was going to do to some other part of the company and did the things that are normally done by IBM research and some other division on the other side of the firewall? You know, I think that's a fact specific question and I don't think that the record developed enough on it to answer it here. The court does not say that that is the breach of the contract. So the district court says I think the contract requires you to get domain independent updates from across the company. And even if it didn't require you to do that, the lack of providing such updates was a breach of good faith and fair dealing. That's pretty close to what I'm saying. So what I'm saying is even if it was understood the way you said it was  good faith and fair dealing with the IBM research, if the way the world works at the time of the contract was IBM research does all the domain independent work and actually signing the contract before that works at other parts of the company, aren't you at least violating the good faith and fair dealing by depriving them of what they expected to get from the contract? I don't think so, Your Honor, among other reasons because the contract specifically says the parties reserve the right to conduct their business in any manner in which they choose. But more than that... Well, not the termination of the contract, so that just begs the question. That's a very good question. The covenant of good faith and fair dealing is part of every contract. Do you consider it as part of the breach of contract rights? Well, as I've always understood it, the breach of covenant, the covenant of good faith and fair dealing imposes an obligation essentially to act in a way that's in violation  contract. And certainly the covenant of good faith and fair dealing wouldn't allow you to erase that from the contract. But there is no such provision. That's correct, Your Honor. My point was going to be that the dismissal of the covenant of good faith claim meant that Nuance went to trial on a claim that IBM breached some express provision of the contract. That was the rationale for the court saying that this good faith claim is duplicated. Okay, so I understand you have a, you know, whether this claim was considered, but I guess I'm just curious what your answer is. Is that if at the time you signed the contract, if the expectation was, okay, it's a contract with IBM Research, but IBM Research is going to do all of this work on the core source code, and then IBM turns in a Nuance somewhere else in the company so that it doesn't have to disclose what otherwise it would disclose, why is that not a violation of the covenant of good faith and fair dealing? I think that would depend among other things on why IBM did that. I mean, if there was a commercially reasonable reason to shift the business in that way. Was there? Was there. Doesn't the record show the reason is because you didn't want to share your developments with Nuance? I think the court made a fine that can be read that way. We disagree with it. Okay, let's get back to the blueprint stuff. In Madoff in 2021 this court distinguished inquiry notice from willful blindness. It said this, inquiry notice is distinct from willful blindness both in degree and intent. Inquiry notice requires knowledge of suspicious facts that need not suggest a high probability of wrongdoing but are nonetheless sufficient to induce a willful blindness. Whereas a defendant on inquiry notice does not necessarily do so with the purpose of avoiding confirming the truth. It seems to me that's a thin line but it's a line. If what the district court did was say we're doing willful blindness which could be the equivalent of knowledge but is actually doing inquiry notice as distinguished by these it would be an error would it not? I mean hypothetically I'm not talking about what this record shows the district court did but if the district court in fact is applying a standard that is tantamount to inquiry notice as we define it rather than willful blindness as we define it then it would be an error. Greg? As you're describing it I construe inquiry notice to be a form of constructive knowledge. If that's what the court did I agree with you. So the question is does this actual a question is does the knowledge that they have rise to the level of willful blindness which requires some evidence it seems to me that they did not do this for a culpable reason. I'm not sure that I find certainly a finding by the district court that they really knew but they had some ulterior motive in not suing them. There was some reason why they absolutely knew. But they knew enough that any reasonable person would conclude that they had knowledge but they deliberately for some nefarious reason decided not to pursue the issue. Is there any finding of some nefarious reason for not pursuing this? The court doesn't make a specific finding with respect to the nefarious reason. Your view is the culpability is they were waiting for what exactly? I think the culpability here is they were gaming the system. IBM put a provision in this contract that required you to bring a claim, any claim you knew of within two years because they wanted certainty. What nuance did here is in 2011 they found out facts that they believed constituted breach of confidentiality. And they should file a suit then even if they think that all we really know is that we're not getting something and it may be totally valueless and we are required to bring this suit or else we'll never find out that we're not getting something actually important. I don't think that's a characterization of the factual findings of the court. What the court found was they knew in 2011 of the facts that they say constituted breach. Then this gets us back to a somewhat peculiar position where what the district court really found was actual knowledge and not through a willful blindness and we don't need to make any inquiry at all into what the district court seems to think was a very important conclusion that this was really something short of actual knowledge it was like willful blindness instead. Here's what I think. The court found overwhelming evidence that nuance knew of the breach. It says nuance claims that it did not  specific assurances because it thought it might get the updates anyway or the withholding was only temporary. That's why it goes through this process. It still resists this conclusion even if they were right. I didn't hear the first part of the question. You should read this as the court saying they had actual knowledge for all of these reasons. Even if I were to credit that I still would find actual knowledge because they were willfully blind. It wasn't necessary. I think the court said there's overwhelming evidence that they had actual knowledge. Nonetheless, nuance claims that for unspecified reasons they thought they might get it later. I could have said that but that's not what it says. The whole finding of knowledge begins with the whole discussion and the whole framework. Even the part you talked about is the first step of the analysis. That's the way the opinion is organized. He goes through the evidence showing they knew. Then he says I'm going to take on their contention. I don't agree that the district court thought about it the way you're describing it. If I think that the findings about actual knowledge were sufficient to establish actual knowledge apart from willful blindness, can we affirm or is the error too much? The district court was ultimately making a willful blindness finding. I know    Why isn't it that the district court was setting up a willful blindness analysis. If I think it's erroneous we shouldn't send it to the district court. I think the findings here are clear. The court found they actually knew. The court  nuances claim that notwithstanding this overwhelming evidence it might harbor a doubt. Then it says on page 58 that the district court found that there is no plausible explanation here for nuances failure to make direct and specific inquiries. There's no plausible explanation. In every willful blindness case I've ever seen in my career as a criminal lawyer, granted, there is a very plausible reason why the person doesn't want to confirm knowledge. If he admitted to himself and others he would go to prison. There is clearly a plausible reason why somebody in a true willful blindness situation does not want to take that step. First, the no plausible explanation is a finding of fact. There is no plausible explanation. That sounds to me like negligence. Boy, they were stupid. There's no plausible reason why they would have intentionally done this. I respectfully disagree. Given the evidence that nuance knew, if nuance truly harbored some  of the evidence,  would not have the question.  having a specific question doesn't show that they didn't have actual knowledge. Mr. Reeves, are we getting all the non-domain dependent information? All the non-domain dependent improvements that IBM software is coming up with? You would have said yes. Are we getting all of the non-domain dependent improvements in code that are being developed by IBM software? You would have said yes because you're still saying yes to us. You're saying there was no breach because the thing that the district court actually found was a breach of contract. We should affirm on the ground that the district court was wrong. You are still saying today that there was nothing that they were entitled to that they didn't get. If they had come to us with the question are we getting all of the domain independent updates that IBM is creating, the answer would have been no you were not. You were not getting anything that IBM software is doing. You were not entitled to anything that IBM software is doing. So you are not getting it. You would have said that is a different answer. You would still in the district court's analysis have been breaching. They would still think there is a breach. The question is maybe there is nothing to say there is not getting anything from software. You probably couldn't have said that literally. You would have said no, we gave you some things but we are not required to and we won't give you anything from software regardless of whether there is anything not domain dependent happening in software. At that point it seems to me they are a little puzzled and they come back and say we disagree. We think we are entitled to anything that is domain independent that comes out of software but we don't want to sue you. Are they doing anything that is not domain dependent? You would have said no. We would have said yes. The issue is not that we don't have anything but we don't have anything. You are still saying that none of the things that were created would be given to them. It wasn't a matter of we don't have it. It was the second part. We have it but your contract doesn't entitle you to it. If I could clarify, there are two versions of the question. They could have asked are we getting everything we are entitled to under the contract. If they said are we getting everything that is domain independent you would have said no. Your position is they do not get anything unless it comes from IBM research and that is what the contract requires. They always qualified the question under the contract so your answer is yes. If they had said are we getting updates from IBM software you would have said no. There was no indication that would have been misleading. The question is a factual question. The issue is we may still have a dispute. There is a hypothetical dispute about what the contract requires. You say this is not an agreement with IBM. It is an agreement with IBM research. I think that is ridiculous. You have this dispute hypothetically about what the contract requires. Why do they sue you? They only sue you not to get some hypothetical theoretical declaratory judgment. They want to know is there anything there? Have you given us all non-domain dependent improvements in the code that are being made and  are you saying that at least the blue washing code is non-domain dependent? We are not contesting that. Did you contend that? Yes. Why should we just assume that if they had asked is there some non-domain dependent code that is non-domain dependent? Why should we assume that you are not entitled to it under the contract as opposed to no, there is no such thing. If there is no such thing you have not reached the contract. That is the argument you made to the district court. One is a legal argument and the other is even if we are wrong on the law there is no non-domain dependent stuff that they were ever entitled to even still. That they were entitled to. We have never taken the position that there was no domain independent code coming out of IBM software. Just that there is actually none of the things that anyone has identified in this case falls into that category. I thought you said that in the district court you were contending that even the blue washing code would not be a non-domain dependent update that they would be entitled to if their interpretation that a contract with IBM is incorrect. That is correct. In the district court our position was that was not within the scope of their contract. There are also documents that we acknowledge. How are they ever going to know? They will know if they ask the right question that you and they have a different interpretation of the contract. They know that because we told them in 2011 and 2012 that IBM has taken a copy of the code  are commercializing it. Commercializing it is a synonym for domain independent updates. Exactly. That they were given this code and they were given this code so that they could make domain dependent products. Independent updates. When you speak of commercializing the code it means getting it ready to be incorporated into commercial products. Maybe that is a misunderstanding. Why is that an update? That is the whole point of the updates. Whatever we did to the code that made it ready to be put into a commercial product, that was an update. You get it ready to be put into a product. On top of that you layer the cancer code. But there is an underlying set of code that hopefully spans across domains. That is the domain independent code. What the judge is telling you is that IBM repeatedly told nuance that IBM software is working on commercializing the code. So they knew that they were doing all the improvements including the domain independent work. They were working independently. That was the point of the firewall. IBM research was doing its best. There was a one-way firewall. IBM research could have been doing improvements that could have gotten the benefit of that. That is possible, right? You are saying nuance was aware that that was not what was happening? I would refer you to the bullet points. That is the evidence that nuance was specifically told IBM software is commercializing deep QA. One more question. We kept you up for the same amount of time. We will have one more question. I know you say it is not necessary but you also defended it. Your argument is they avoided getting an answer to the question are there domain independent work being done by IBM software. You would have said no. You would have said yes. They didn't ask that question. Even asking the question are there updates to which we are entitled that we are not getting, couldn't that prompt the answer? You are getting everything we think you are entitled to but to be clear, there are updates. If they were purposefully avoiding getting the answer to that question, wouldn't it be a weird strategy for them to ask even a related question? I don't think so. The evidence is they were told specifically you get what is in research and nothing else. That is our understanding of what our obligation is under the contract. That is how we can answer the question. The reason they didn't ask that question is because they knew the answer already and they were only debating whether they were getting something from IBM research. The reason they didn't ask the question is because they purposefully avoided finding out whether there were updates coming from IBM software. I think both are true. They knew the answer. This report says they are avoiding finding out whether there are updates coming from IBM software. You can't both be avoiding finding something out. I think that is local blindness. You know it but you don't want to hear it explicitly to confirm it. I think that is exactly what is going on here. In 2011 they know that IBM has not and will never give them IBM software updates. In 2011 this is a nascent commercial project. They don't know what the value will be. The contract says they have to bring their claim within two years. They don't want to spend the money to invest in the lawsuit. In our view they knew the contract entitled them to the research. They basically put it in their back pocket. If this becomes worth pursuing we will go for it. If we take the district court findings and the contract entitles them to domain independent updates from the software side we can't accept the assumption they knew they were not entitled to domain independent updates. They knew we had a different view. Do we invest money in expensive litigation. Do we invest money to pursue a claim they will oppose to gain something of value. Or do we put it in our back pocket in case it becomes something worth going after. Thank you very much. Why don't we hear from Mr. Silbert and keep it strictly to three minutes. We don't want to tire you out. I will try to do three points in three minutes. There is no dispute we were in fact getting commercialization updates from the software group. My friend admitted it. The district court found it at page 19 of the SBA. There is no evidence we knew we were getting it. That is dead wrong. We knew we were getting commercialization updates after the firewall was in place. You asked wouldn't the movement of over 130 people out of the research group into the software group wouldn't that be a violation of the covenant of good faith and fair dealing? Absolutely. My friend said there is no evidence they did that in order to harm us. That is dead wrong. Look at page 1289. Final point, Judge Lynch. You are right. It is glaring, jumping off the page from the record. If you look at the email exchange on 1289, you will see why. They said if nuance doesn't want to agree, we will move everyone out of the research. What would they have told us if we asked them? The best evidence is not  record. That is how they reacted when we did tell them what our interpretation of the contract is. My friend referred you to points in 2011 that we don't get things in software. That was in the context of the proposed amendment that we rejected. In November of 2011, we say we get everything, all of IBM. If you go to page 148, he talks about internal IBM emails where they say this is nuance's position. They get everything, not just research. On the following page, the question is asked, did you ever do anything to clarify and tell them that you believed that they didn't get things from software? The answer is no. Yes, they said early on that we don't get things from software. We said no, we are not accepting the amendment. We told them we do get things from all of IBM. Meanwhile, we continue to get commercialization updates from the software group. We just didn't get all of them, but we didn't know that. We didn't know that there were other ones out there that we weren't getting. That's why we said are we getting everything we are entitled to? The answer is no, you could not. The answer is yes, because actual knowledge is a fact issue. The district court is the fact finder. This court cannot look at the record and say I would have found actual knowledge even if the district court didn't do that for a long time. We will take this case under advisement. We invite up counsel for the last case to be argued, which is Sousa versus exotic island enterprises 21-2149. We             enterprises 21-2149. We invite counsel for the last case to be argued, which is Sousa versus exotic island enterprises           Sousa  exotic island enterprises 21-2149. We invite   be argued,  Sousa versus exotic island case to  argued, which is Sousa versus exotic island enterprises 21-2149. We invite counsel for the last case to be argued, Sousa versus exotic island enterprises  We invite counsel for the last case to    Sousa          We  counsel for the last argued, which is Sousa   island enterprises 21-2149. We which is Sousa versus  island enterprises 21-2149. We the  case to be argued,  be   Sousa versus exotic island case to be   Sousa versus exotic be argued, which is  versus exotic island  21-2149.    for the last  invite counsel for the  case to be